IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LAMONT HARVEY, | : | CIVIL ACTION |
| Petitioner, | : | |
| | : | |
| v. | : | |
| | : | |
| JACK SOMMERS, et al., | : | NO.  16-187 |
| Respondents. | : | |

## REPORT AND RECOMMENDATION

DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE                                    April  28, 2017

Before the Court for Report and Recommendation is the *pro se* petition of Lamont Harvey, a prisoner incarcerated at SCI-Waymart in Waymart, Pennsylvania, for the issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.[1]  Harvey is serving a sentence of imprisonment of 11½ to 25 years following his convictions in the Philadelphia Court of Common Pleas of involuntary deviate sexual intercourse, indecent assault of a person under 13, corrupting the morals of a minor, and endangering the welfare of children.  He seeks habeas relief on several Sixth Amendment grounds involving his rights to a meaningful appeal and to the assistance of counsel at trial and on appeal.  For the reasons set out below, we recommend that the petition be denied and dismissed.

---

[1] Although Petitioner is currently confined within the Middle District of Pennsylvania, which includes Wayne County, *see* 28 U.S.C. § 118(b), venue is proper here pursuant to 28 U.S.C. § 2241(d) in that his confinement grew out of a prosecution and conviction in the Philadelphia Court of Common Pleas within the Eastern District of Pennsylvania.

# I.    FACTUAL AND PROCEDURAL BACKGROUND[2]

Petitioner was arrested on May 25, 2005 and charged in several instances of unlawful sexual misconduct in 2003 and 2004 with S.I., the ten-year old daughter of a paramour.  At trial before the Honorable Rosalyn K. Robinson in March 2007, the Commonwealth presented testimony from S.I., S.I.'s mother, and the officer from the Philadelphia Police Department's Special Victim's Unit who investigated the complaint.  The Commonwealth also called L.P., Petitioner's sister, who testified that he had also sexually assaulted her when she was a minor. The defense presented testimony from Harvey's wife and from a police detective who had taken a statement from L.P. in 1999 regarding her allegations against Harvey.  S.I., her mother, and Mrs. Harvey presented somewhat conflicting testimony regarding Petitioner's principle residence at the time of the charged conduct involving S.I.  The defense challenged the testimony of S.I. and her mother regarding when exactly Petitioner would have been living in their home.  The jury, however, ultimately convicted Harvey of all crimes charged involving S.I.

---

[2]   In preparing this Report and Recommendation, we have reviewed the following:  Harvey's form § 2254 petition submitted on January 10, 2016 (Doc. No. 1) ("Pet."); his Memorandum of Law in Support of his petition, dated January 10, 2016 and docketed on February 16, 2016 (Doc. No. 7) ("Pet'r Mem."); the Response in opposition to the Petition filed by the Philadelphia District Attorney on June 23, 2016 (Doc. No. 16) ("Resp."); and the trial court record provided by the Clerk of the Court of Common Pleas of Philadelphia County on April 28, 2016 ("St. Ct. Rec.").  Although he was given the opportunity to do so, Harvey did not submit a reply brief.

In conjunction with the Memorandum of Law that Harvey submitted in February 2016 (though dated January 10, 2016), Harvey also submitted another form § 2254 petition using a slightly different edition of the form.  This petition, Doc. No. 5, was docketed on February 16, 2016.  The two petitions are essentially identical and present the same claims.  When citing to the operative § 2254 petition, we will cite to version of the petition completed on this district's standard form, Doc. No. 1, using that document's pagination.

Our statement of the factual background of this petition derives from the appellate court decisions on direct appeal and PCRA review: *Commonwealth v. Harvey*, No. 2439 EDA 2007 (Pa. Super. Ct. Aug. 30, 2011), and *Commonwealth v. Harvey*, No. 3230 EDA 2013 (Pa. Super. Ct. Mar. 10, 2015).  These opinions are attached to the Response (Doc. No. 16) as Exs. A and B, respectively.

The court ordered a Megan's Law assessment and on August 3, 2007 presided over a hearing pursuant to 42 Pa. Cons. Stat. § 9799.24. The court found Harvey to be a sexually violent predatory offender, a designation which requires that he adhere to life-long reporting and counseling requirements or face prosecution pursuant to 18 Pa. Cons. Stat. § 4915.1. *See* 42 Pa. Cons. Stat. § 9799.21. At the conclusion of the hearing, the court also imposed an aggregate sentence of 11½ to 25 years in prison. (N.T. 8/3/07 at 49.)

Following resolution of post-sentence motions, Harvey filed a notice of appeal and request for trial transcripts on September 24, 2007. (St. Ct. Rec. Doc. D16.) The subsequent appeals process took on a life of its own, spanning more than four years and complicated by the realization, years into the process, that the trial proceedings could not be transcribed in their entirety. This absence of a complete trial record slowed proceedings from the outset, as defense counsel had to request an extension of the October 2, 2007 deadline to file the Pa. R. A. P. 1925(b) "Statement of Matters Complained of on Appeal" due to the unavailability of his trial transcripts. (St. Ct. Rec. Doc. D17.) While he did ultimately file a 1925(b) Statement on October 23, 2007 challenging the constitutionality of Megan's Law, he reserved the right to raise other issues when he received the complete trial transcripts, which had still not been served upon him. (St. Ct. Rec. Doc. D18.) The trial court promptly ordered the court reporter to transcribe all notes of testimony from trial. (St. Ct. Rec. Doc. D20 (Oct. 25, 2007).) Seeking to move the matter along after nearly a year of inactivity, on September 12, 2008, the trial court again ordered Harvey to file a 1925(b) Statement. Harvey responded by filing a petition for an

extension of time on the grounds that he had not received all relevant notes of testimony, specifically, those from March 6-7, 2007, the first two days of trial.[3]

On October 30, 2008, the trial court issued an opinion declaring that Harvey had received all relevant notes of testimony. This prompted Harvey to file an appeal to the Superior Court, as he still had not received notes from March 6 or 7, 2007. Recognizing this deficiency in the record, the Superior Court remanded on February 13, 2009 for completion of the notes and for Harvey to file a final 1925(b) Statement thereafter. Unfortunately, as became apparent, the court reporter had resigned after trial and could or would not retrieve and transcribe notes of those trial dates. A court administrative officer advised Harvey in a letter dated September 21, 2010 that the notes of testimony for those dates were "permanently unavailable." (St. Ct. Rec. Doc. D30.) Harvey filed a further 1925(b) Statement with the Common Pleas Court, asserting that the lack of trial transcripts entitled him to a new trial because "he could not create 'an equivalent picture' of what transpired at trial." (St. Ct. Rec. D29.) He also filed a Pa. R. A. P. 1923 "Statement in Absence of Transcripts," which asserted what Harvey presented as a re-creation of the missing testimony of March 6 and 7, 2007, relying heavily on the victim's testimony at the preliminary hearing. The Commonwealth filed a response and objected to two allegations in Petitioner's version of the events at trial but did not submit an alternative version of what transpired at trial. In an opinion filed on February 17, 2011, the trial court accepted Harvey's 1923 Statement and concluded that Harvey was not entitled to a new trial because he possessed an "equivalent picture" of what occurred during trial. *Commonwealth v. Harvey*, No. CP-51-CR-0605771-2005 (Phila. Comm. Pl. Ct. Feb. 17, 2011) (St. Ct. Rec. D33). The Superior Court affirmed.

---

[3] There appears to be no dispute that these two trial days consisted of jury selection, opening statements, the testimony on direct examination of S.I., and part of the cross-examination of S.I. *See also* Comm. Pl. Ct. Crim. Docket Sheets at p. 11.

*Commonwealth v. Harvey*, No. 2439 EDA 2007 (Pa. Super. Ct. Aug. 30, 2011). Harvey sought allocator in the Pennsylvania Supreme Court, but the request was denied on January 5, 2012. *Commonwealth v. Harvey*, No. 572 EAL 2011 (Pa. Jan. 5, 2012).

On March 19, 2012, Harvey filed a *pro se* petition for collateral review under the Post-Conviction Relief Act ("PCRA") alleging due process violations and ineffective assistance of counsel. (St. Ct. Rec. Doc. D36.) Counsel was appointed and filed an amended petition, adding claims of ineffective assistance of counsel at trial and on appeal regarding the failure to file a motion that the verdict was against the weight of the evidence and the failure to file a Rule 600 motion. (St. Ct. Rec. D34.) The PCRA Court dismissed his petition on November 25, 2013. (St. Ct. Rec. Doc. D43.) The Superior Court affirmed the dismissal, *Commonwealth v. Harvey*, No. 3230 EDA 2013 (Pa. Super. Ct. Mar. 10, 2015), and the Pennsylvania Supreme Court denied allowance of appeal. *Commonwealth v. Harvey*, No. 130 EAL 2015 (Pa. Aug. 17, 2015).

Harvey submitted his § 2254 habeas petition to this Court on January 10, 2016. He first seeks relief on the ground that he was deprived of his right to a meaningful appeal given the unavailability of some of the trial transcripts. He also asserts that trial counsel was ineffective in failing to file a post-verdict motion challenging the weight of the evidence and in failing to file a written motion to dismiss for a violation of his speedy trial rights. Finally, he asserts that appellate counsel was ineffective in failing to raise on direct appeal a challenge to his designation as a sexually violent predator and in failing to seek a new trial based upon prosecutorial misconduct. Respondents answered the petition on June 23, 2016, contending that

all claims asserted are either procedurally barred or without merit.[4]  Petitioner did not file a reply.

## II.  LEGAL STANDARDS

Prior to our discussion of Harvey's claims, we briefly set out the legal requirements pertaining to his obligation to exhaust available state court remedies as to his claims and the consequences of a failure to do so. We also discuss the constraints upon a federal court reviewing claims adjudicated on the merits in the state court. We then describe the standard employed by the United States Supreme Court for claims of ineffective assistance of counsel under the Sixth Amendment, the source of a number of the claims upon which Harvey seeks relief.

### A.  Exhaustion and Procedural Default

To warrant federal habeas review of a claim, a petitioner must have exhausted the corrective process available in state courts, by presenting the claim in "one complete round of the State's established appellate review process," thus "giv[ing] the state courts a full and fair opportunity to resolve" the claim. *O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999). *See also* 28 U.S.C. § 2254(b)(1) (providing that petition "shall not be granted" unless exhaustion requirement satisfied).  A petitioner is considered to have defaulted any claim that was not properly presented to the state court or that was presented but not considered because of a state procedural rule.  *See, e.g., Coleman v. Thompson,* 501 U.S. 722, 749 (1991).  A defaulted claim cannot be the basis for federal habeas relief unless the petitioner shows "cause for the default and actual prejudice as a result of the alleged violation of federal law, or [unless he] demonstrates that failure to consider the claims will result in a fundamental miscarriage of justice."  *Id.* at 750.

---

[4]  Respondents do not contest the timeliness of the petition.

*See also Teague v. Lane,* 489 U.S. 288, 308 (1988) (plurality opinion); *Wainwright v. Sykes*, 433 U.S. 72 (1976). The cause exception requires a showing "that some objective factor external to the defense impeded [petitioner's] efforts to comply with the State's procedural rule" when he presented the claim to the state court. *Murray v. Carrier,* 477 U.S. 478, 488 (1986). To prove a fundamental miscarriage of justice, the petitioner must support his claims with a "colorable showing of factual innocence." *McCleskey v. Zant,* 499 U.S. 467, 495 (1991).

### B.      Standards for State Adjudicated Claims

When the claim presented in the federal habeas petition was adjudicated on the merits in the state courts, the federal court shall only grant habeas relief if the adjudication:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court has clearly stated that a writ may issue under the "contrary to" clause of Section 2254(d)(1) only if the "state [c]ourt applies a rule different from the governing rule set forth in [United States Supreme Court] cases or if [the state court] decides a case differently than [the United States Supreme Court has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002). A writ may issue under the "unreasonable application" clause only where there has been a correct identification of a legal principle from the Supreme Court but the state court "unreasonably applies it to the facts of the particular case." *Id.* This requires the petitioner to establish that the state court's analysis was "objectively unreasonable." *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002).

### C.     *Strickland* Standard for Ineffective Assistance of Counsel

Petitioner has raised claims of ineffective assistance of counsel, in addition to his claim that he suffered a violation of his right to a meaningful appeal.  The Supreme Court established the two-prong test to determine if a defendant was deprived of his Sixth Amendment right to counsel in *Strickland v. Washington,* 466 U.S. 668 (1984).   Under *Strickland,* a petitioner alleging ineffective assistance of counsel must prove that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 668, 694.

To satisfy the first prong, a defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.  A reviewing court should be "highly deferential" and must make "every effort... to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689.  Further, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.*

To satisfy the second prong, the defendant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceeding.  *Id.*  It follows that counsel cannot be ineffective

for failing to pursue meritless claims or objections.  *See, e.g., United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999); *United States v. Fulford*, 825 F.2d 3, 9 (3d Cir. 1987).

## III.  DISCUSSION

Harvey presents five grounds for relief for alleged violations of his Sixth Amendment right to the assistance of counsel at trial and on appeal, as well as a violation of his right to a meaningful appeal.[5]  Two claims arise from trial counsel's failures to file a post-verdict motion and to file a motion to dismiss for a violation of his right to a speedy trial.  Two claims arise from appellate counsel's failures on direct appeal to argue that petitioner did not meet the statutory definition of a sexually violent predator and to seek a new trial based on the prosecutor's closing statements.  Lastly, Harvey claims that the absence of trial transcripts for the first two days of trial amounts to a violation of his right to a meaningful appeal.

We first address the claims of ineffective assistance of both trial and appellate counsel, one of which Respondents allege was procedurally defaulted.  We then address the claim concerning the alleged violation of Harvey's right to a meaningful appeal due to the unavailability of trial transcripts.

### A.  Ground One: Trial counsel's failure to file a post-verdict motion challenging the weight of the evidence

Harvey alleges that his counsel was ineffective because he did not file a post-verdict motion that the verdict was against the weight of the evidence.  (Pet. at 6.)  He contends that,

---

[5] Harvey's form habeas petition actually sets out *six* grounds for relief.  One of the claims set out in his petition, however, asserts generally that appellate counsel "failed to raise issues for direct appeal," *see* Pet. at 12 (Ground Three), while the next two issues presented articulate the specific issues that Harvey contends appellate counsel should have presented.  *See id.* at 13-14 & 14a (Grounds Four and Five).  Harvey's Memorandum of Law in support of his petition does not identify any other areas of appellate counsel ineffectiveness beyond the two specific examples cited in Grounds Four and Five.  Therefore, we consider Ground Three to be subsumed within Grounds Four and Five and will not discuss it as a separate claim.

"[t]he evidence was contradictory and inconsistent throughout the trial." (Pet'r Mem. at 2.) He further argues that, "[the victim's] testimony was contradicted by everyone else, mainly by her mom, but also by other witnesses." (*Id.*) Specifically, Harvey notes a conflict in testimony between the victim, her mother, and Mrs. Harvey regarding where Harvey was living at the time that the criminal acts allegedly took place. (Pet'r Mem. at 2-3.) Although Petitioner concedes that the victim testified about criminal acts he committed against her, he claims that "[t]here was no evidence to support the fact that these offenses actually took place." (*Id.* at 3.)

Petitioner raised this claim on PCRA but the state court found no right to relief. The lower court noted it could not reverse his conviction merely because Harvey identified a conflict between the Commonwealth's evidence and his own. The court noted that "the jury heard those conflicting pieces of testimony, and, having been properly charged on the law, decided to believe one witness over another." *Harvey*, No. CP-51-CR-0605771-2005, slip op. at 3 (Phila. Comm. Pl. Ct. Apr. 25, 2014) (St. Ct. Rec. Doc. D45). On appeal, the Superior Court similarly explained that "[t]he mere conflict in testimony regarding where Appellant resided for a short period of the relevant time-frame does not constitute evidence that is so one-sided or weighted in favor of acquittal as to shock one's sense of justice." *Harvey,* No. 3230 EDA 2013, slip op at 9. As such, the Superior Court held that the PCRA court was within its discretion to not hold an evidentiary hearing on this claim as it was without merit. *Id.*

Respondents argue that the Superior Court's rejection of Harvey's underlying weight of the evidence claim, on the merits, precludes him from establishing a *Strickland* claim for counsel's failure to file such a post-trial challenge under state law. (Resp. at 10.) Furthermore, because the Superior Court adjudicated this claim on the merits, Harvey could only obtain relief for this claim if he demonstrated that the Superior Court's decision was contrary to or an

unreasonable application of federal law, or based on an unreasonable determination of the facts. He has not done so. The conflicting testimony regarding where Petitioner resided during the time of the criminal acts did not refute the victim's testimony of the actual commission of the acts in her home where he often spent time with her mother, with whom he also had a child. Counsel's failure to file a motion that the verdict was against the weight of the evidence did not constitute deficient performance. Harvey is not prejudiced by his counsel's decision not to file a motion that had no merit. The Superior Court's decision was not contrary to or an unreasonable application of clearly established federal law, nor was it based on an unreasonable determination of the facts presented in state court. Accordingly, relief is not available to Harvey on this claim.

**B.     Ground Two: Trial counsel's failure to move to dismiss charges under Pa. R. Crim. P. 600**

Harvey next claims that his counsel was ineffective for failing to file a written motion to dismiss his charges under Pa. R. Crim. P. 600, the state procedural rule designed to ensure a prompt trial.[6] (Pet'r Mem. at 5.) Rule 600 calls for a criminal trial to begin by, what both parties

---

[6] This rule provides, in relevant part:

(A) Commencement of Trial; Time for Trial

(1) For the purpose of this rule, trial shall be deemed to commence on the date the trial judge calls the case to trial, or the defendant tenders a plea of guilty or nolo contendere.

(2) Trial shall commence within the following time periods:
(a) Trial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed.
(b) Trial in a court case that is transferred from the juvenile court to the trial or criminal division shall commence within 365 days from the date on which the transfer order is filed.
(c) When a trial court has ordered that a defendant's participation in the ARD program be terminated pursuant to Rule

*(continued…)*

refer to as, a "mechanical run date." The mechanical run date is ordinarily 365 days after the criminal complaint has been filed, but the rule allows for adjustments based on excludable and excusable time. *See* Pa.R.Crim.P. 600; *Harvey*, No. 3230 EDA 2012, slip op. at 10. The complaint against Harvey was filed on May 25, 2005, making the initial mechanical run date May 25, 2006. (Pet'r Mem. at 6.) Petitioner claims that "a number of continuances" adjusted the run date to November 15, 2006, which he accepts as his correct mechanical run date. (*Id.*) His trial, however, did not commence until March 6, 2007. (*Id.*)

The PCRA court found this claim to be "underdeveloped and meritless" where Harvey failed to explain how he determined that the proper adjusted run date was November 15, 2006. *Harvey*, No. CP-51-CR-0605771-2005, slip op. at 4 (Phila. Comm. Pl. Ct. Apr. 24, 2014). The court also noted that the Commonwealth "provided [the PCRA court] with detailed calculations of excludable and excusable time, based on the court record, which [the PCRA court] accepted," and which showed that the mechanical run date was actually May 5, 2007. The Superior Court accepted the PCRA court's finding and explained that Harvey had effectively waived this claim because he failed to develop it and merely asserted what he believed to be the run date. *Harvey,* No. 3230 EDA 2012, slip op. at 11-13. *See also Commonwealth v. McDermitt*, 66 A.3d 810, 814

---

318, trial shall commence within 365 days from the date on which the termination order is filed.
    (d) When a trial court has granted a new trial and no appeal has been perfected, the new trial shall commence within 365 days from the date on which the trial court's order is filed.
    (e) When an appellate court has remanded a case to the trial court, the new trial shall commence within 365 days from the date of the written notice from the appellate court to the parties that the record was remanded.

Pa. R. Crim. P. 600.

(Pa. Super. Ct. 2013) (explaining how "undeveloped claims are waived and unreviewable on appeal").

Respondents argue that Petitioner's claim is procedurally barred, based on the Superior Court's finding that his claim was underdeveloped and thus waived. Respondents contend that the well-settled waiver rule reflects an independent and adequate state law basis for disposition of this claim. We agree that Harvey failed to develop his claim in state court and that the waiver rule cited by the PCRA court was an adequate basis upon which to deny review. Harvey's claim would therefore be reviewable here only if he can prove "cause for his state-court default of any federal claim, and prejudice therefrom," or that "a fundamental miscarriage of justice" would result if we did not consider its merits. *See Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Coleman v. Thompson,* 501 U.S. 722, 750 (1991). Petitioner did not provide us evidence of any cause that prevented him from properly presenting on PCRA review an ineffectiveness claim regarding the speedy trial issue. Without any proof of cause, Harvey does not establish the cause and prejudice exception. Further, Petitioner does not present any evidence that our failure to consider this claim would amount to a fundamental miscarriage of justice. Harvey offers no new evidence of his factual innocence such that "no reasonable juror would have found [him] guilty." *Schlup v. Debo*, 513 U.S. 298, 329 (1995). Accordingly, we conclude that there is no basis to excuse the default of Harvey's claim alleged in Ground Two. It provides no basis for habeas relief here.

### C. Ground Four: Appellate counsel's failure to argue that Harvey did not meet the statutory definition of a sexually violent predator

In Ground Four,[7] Harvey asserts that counsel was ineffective in his appellate representation in "fail[ing] to argue that there was insufficient evidence to establish that [he] met the statutory definition of a [s]exually violent [p]redator." (Pet. at 11.) Petitioner argued that the trial court's finding that he was a sexually violent predator (SVP) was based entirely upon "hypothetical testimony" from a doctor who "did not use any actuarial instruments, but just used his clinical judgments to consider various factors." (Pet'r Mem. at 10.) Harvey contends that a court's determination that an offender should be classified as an SVP should "certainly includ[e] an inquiry into the likelihood of re-offense." (*Id.* at 11) (citing *Commonwealth v. Dixon*, 907 A.2d 553, 559 (Pa. Super. Ct. 2006)). He suggests that he did not meet the definition of an SVP in that he believes "[t]here was no evidence to suggest that Petitioner was 'likely' to re-offend." (Pet'r Mem. at 12.)

The PCRA Court denied relief on this ineffectiveness claim without an evidentiary hearing. In his counseled appeal, Petitioner argued that the sentencing court erred in relying upon expert testimony that did not establish that he was likely to re-offend, which is one of three elements the Commonwealth must prove by clear and convincing evidence. *See* Br. for Appellant, No. 3230 EDA 2013 (Aug. 13, 2014) (Resp. Ex. D). He argued that the expert should not have been relied upon because he did not interview Harvey and because the recidivism question was inherently a subjective assessment. He argued that the sentencing court should have required "something more than a doctor's conclusion that Appellant was 'likely' to re-offend." *Id.* at *23-25. The Superior Court rejected this claim because Harvey "d[id] not

---

[7] As we explained above, what Harvey set out as Ground Three in his petition was a generalized claim of ineffective assistance of appellate counsel for failure to present certain issues for appeal. The particular issues to which he refers are addressed in Grounds Four and Five.

provide any discussion as to whether there was a reasonable basis for appellate counsel's actions nor [did] he develop any argument that he was prejudiced by appellate counsel's actions." *Harvey*, No. 3230 EDA 2012, slip op. at 14. The Superior Court held that Harvey "failed to demonstrate even a *prima facie* showing that appellate counsel was ineffective [and because] Appellant completely failed to include substantive assertions regarding the reasonable basis and prejudice prongs … the PCRA court was not required to hold an evidentiary hearing on these claims," and Harvey was not entitled to relief. *Id.* (internal citations omitted).

The Superior Court decision cannot be said to reflect an unreasonable application of *Strickland*. Harvey offered little by way of argument that the sentencing court's designation of him as an SVP was erroneous and would not have withstood plenary review. As the Superior Court correctly noted, he also failed to make any argument concerning the unreasonableness of counsel's action where counsel focused on another issue for the direct appeal --- that of the missing transcript --- that would potentially have earned Harvey a new trial altogether. In these circumstances, we cannot say that counsel's actions could be considered objectively unreasonable. It was appropriate for the state court to deny PCRA relief on this *Strickland* claim. As the Superior Court's decision was not contrary to nor an unreasonable application of federal law, nor was it based on an unreasonable determination of the facts, Ground Three does not provide a basis for habeas relief.[8]

---

[8] We consider there to be some question as to whether Harvey can seek habeas relief under the Sixth Amendment based upon the performance of counsel at this stage of proceedings given that there is some authority within our district as to whether the proceeding is civil in nature and not criminal. *See Brady v. Sommers*, Civ. A. No. 16-725, 2016 WL 4134562, at *6 & n.6 (E.D. Pa. Aug. 1, 2016) (Quiñones Alejandro, J.) (concluding that there is no constitutional right to counsel at SVP evaluations and hearings because those proceedings are considered civil, not criminal, in nature). Ultimately, it is not necessary to resolve that question.

**D. Ground Five: Appellate counsel's failure to appeal denial of mistrial based on prosecutorial misconduct**

Harvey next asserts that appellate counsel was ineffective for not including in the appeal a claim of trial court error in the denial of his motion for mistrial based on the prosecutor's comments in closing arguments, which he believed infringed upon his Fifth Amendment right to silence. (Pet'r Mem. at 13.)

During his closing argument, the prosecutor commented upon the absence of Harvey's brother, Marvin Harvey, from the defense's case:

> How did [the disclosure of Harvey's assaults] come out? She wrote about it in a diary that got found. Found by who? His brother.
>
> Now, look, they don't have to present any evidence. That's his right. That's how we do it in Pennsylvania. You're charged with a crime. You're innocent until proven guilty. You sit there and the government has to prove the case against you. That's fair. That being said, you have to be able to use your reasoning when you're thinking about these things.
>
> He said Officer Hammond did nothing to contact Uncle Harvey. Yes, she did. She told you what she did. She told them on the phone. He said, I don't want to have anything to do with what my brother did. I don't think it's a stretch to wonder why [he is] not here now, but I believe [it's] important.
>
> He's not here now. He's not, not for me to ask him questions and not for him to ask him questions either. It's his brother. He doesn't have to present evidence, but if Marvin Harvey is involved in this, wouldn't you expect Marvin Harvey to be running to this witness stand to tell you this is a load of crap. What are they talking about? I was there. Finding a diary page? I don't know what they're talking about.

(N.T. 3/9/07 at 56-57.) After closing arguments and outside of the presence of the jury, trial counsel objected to the prosecutor's mention of Harvey's brother and moved for a mistrial. The trial court denied the motion and counsel's subsequent request for a curative instruction. (*Id.* at 75-77.)

As described above, on direct appeal, counsel ultimately challenged only the unavailability of the notes of testimony of March 6-7 as impacting Harvey's right to a meaningful appeal. On PCRA review, Harvey claimed that the trial court's denial of his motion for a mistrial was an abuse of discretion that counsel should have raised in the direct appeal. On appeal of the dismissal of the PCRA petition, Petitioner against focused on the perceived strength of the claim that the prosecutor's comments deprived him of his right to a fair trial "and this issue should have been appealed." Br. for Appellant, No. 3230 EDA 2013, *27 (Aug. 13, 2014) (Resp. Ex. D).

The Supreme Court has instructed that courts reviewing an attorney's well-informed strategic decisions --- which could include discerning which issues to argue on appeal --- must be presumed to be correct as long as they are objectively reasonable. *See Strickland*, 466 U.S. at 689. Here, Harvey merely offers his opinion that appellate counsel should have raised this issue on appeal because the prosecutor's comments in the closing statement at trial constituted misconduct. (Pet'r Mem. at 13.) This assertion alone, however, does not prove that appellate counsel's decision to not raise this issue on appeal was objectively unreasonable or that his appeal would have been adjudicated differently had counsel raised this issue. As the Superior Court found, Harvey "failed to demonstrate even a *prima facie* showing" of ineffectiveness of counsel because he "[did] not provide any discussion as to whether there was a reasonable basis for appellate counsel's" decision of which issues to appeal, nor did Harvey argue that he was prejudiced by counsel's decision. *Harvey*, No. 3230 EDA 2013, slip op. at 14.

We cannot find the Superior Court's resolution of this claim to be unreasonable. Had appellate counsel presented this issue, Harvey would not have benefitted from it unless the trial court ruling could be considered reversible error. This requires an inquiry as to whether the

prosecutor's statements "affected [Harvey's] substantial rights and the fairness and integrity of the proceeding, an inquiry [that] is closely aligned with the Due Process inquiry of 'whether the misconduct so infected the trial with unfairness as to make the resulting conviction a denial of due process in light of the entire proceeding.'" *Gov't of the Virgin Islands v. Mills*, 821 F.3d 448, 460 (3d Cir. 2016). Allegations of prosecutorial misconduct based on statements made at trial are considered "in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant." *Moore v. Morton*, 255 F.3d 95, 107 (3d Cir. 2001). Even if the prosecutor's statements rose to the level of prosecutorial misconduct, we are unable to stay that it constituted reversible error. At Harvey's trial, the prosecutor's statements were not pervasive or severe and were briefly stated during closing arguments. The statements comprised 39 lines of text out of approximately 540 lines of text in the prosecution's entire closing argument. Although the trial judge declined to give a curative instruction about the prosecution's comments, the court's general jury instructions made clear that Harvey did not bear any burden to present evidence in his defense. (N.T. 3/9/07 at 80.) Further, the judge instructed the jury prior to closing arguments that arguments of counsel "do not constitute evidence," and that the jury is not bound by counsel's recollection of or perspective on the evidence. (N.T. 3/9/07 at 31.) Lastly, there was a sufficient amount of evidence presented upon which the jury could convict Harvey, notwithstanding the prosecutor's improper statement.

Given that the prosecutor's misconduct statement was not pervasive and severe, the jury charge properly instructed the jury regarding the burden of proof, and in light of the extensive evidence against Harvey, it is not reasonably likely that the Superior Court would have found an abuse of discretion in the denial of the motions for a mistrial and curative instruction. As with

the claim presented in Ground Three concerning the failure to challenge the SVP designation on appeal, the Superior Court found no merit to this claim of deficient performance of appellate counsel. We find no evidence that the Superior Court's ruling was contrary to or an unreasonable application of federal law or an unreasonable determination of facts in light of the evidence in the record. Accordingly, the petition as to Ground Four should be denied.

### E. Ground Six: Lack of trial transcripts from first two days of trial as a deprivation of a meaningful appeal

Lastly, Petitioner contends that "[t]he lack of trial transcripts due to the inability of the court stenographer to find the notes of trial after a diligent search operates to deprive the Appellant of a meaningful appeal…" (Pet'r Mem. at 15.) As we detailed above, testimony from the first two days of trial could not be transcribed, and Harvey's appellate counsel filed a Pa. R. App. P. 1923 "Statement in Absence of Transcript," relying solely on the preliminary hearing transcript as to the victim's testimony. *Harvey*, No. 2439 EDA 2007, slip op. at 2, 5. He now asserts that his appellate "counsel [was] faced with the impossible task of trying to provide adequate representation in that [Appellant's] counsel was unfamiliar with lower court proceedings" and that this situation resulted in him not having a meaningful appeal. (Pet'r Mem. at 15-16.)

To establish a violation of his right to a meaningful appeal on these grounds, Harvey must prove that he had a colorable need for a complete trial transcript, was prejudiced without it, and that an alternative would not suffice. *See Draper v. Washington,* 372 U.S. 487 (1963); *Fahy v. Horn,* 516 F.3d 169, 190, n.21 (3d Cir. 2008). As the Court recognized in *Draper v. Washington*, "[a]lternative methods of reporting trial proceedings are permissible if they place before the appellate court an equivalent report of the events at trial from which the appellant's contentions arise." *Draper,* 372 U.S. at 495. The Court has also noted, however, that "where the

grounds of appeal [create] a colorable need for a complete transcript," the State bears the burden to prove that "only a portion of the transcript or an 'alternative' will suffice for an effective appeal on those grounds." *Mayer v. City of Chicago*, 404 U.S. 189, 195 (1971). In short, an appellant must be given a "record of sufficient completeness to permit proper consideration of their claims" on appeal. *Draper*, 372 U.S. at 499.

Harvey presented this claim in the direct appeal process, articulating it first in his Pa. R. App. P. 1925(b) "Statement of Matters Complained of on Appeal," and then in his appellate brief to the Superior Court. *See* Br. for Appellant, No. 2439 EDA 2007 (Aug. 13, 20Apr. 5, 2011) (Resp. Ex. C). The Superior Court relied heavily on the trial court's opinion and held that Harvey was not entitled to relief under this claim. *Harvey*, No. 2439 EDA 2007, slip op. at 10. The Superior Court adopted the trial court's finding that Harvey "had created an equivalent picture permitting meaningful review." *Id.* at 8. Additionally, the Superior Court adopted the trial court's alternative finding that Harvey failed to use the "best available" means to prepare his Statement in Absence of Transcript. *Id.* at 8-10.[9] Having concluded that Harvey failed to demonstrate a colorable need for the actual transcripts from the first two days of his trial, the Superior Court held that Harvey was not entitled to a new trial based upon the absence of these transcripts.

---

[9] The Superior Court also adopted an alternative holding that if Harvey did not have a sufficient record upon which his appeal could be heard, it was due to his own fault. Under Pennsylvania law, it is the appellant's responsibility to obtain trial transcripts. *See Harvey,* No. 2439 EDA 2007, slip op. at 6 (citing Pa. R. App. P. 1911(a)). The state court found that Harvey failed to use the "best available means to re-create the record, as required by Pa.R.A.P. 1923." *Id.* at 9. In completing his Pa. R. App. P. 1923 "Statement in Absence of Transcripts," Harvey did not include his own recollection of the first two days of trial, nor did he consult with the district attorney's office or the trial judge, who apparently had detailed trial notes. *Id.*

Respondents note correctly that Harvey's briefing here fails to allege that anything improper happened during the days for which the transcripts are missing. *See* Resp. at 17. Harvey does not, for example, suggest that he has a *Batson* claim regarding jury selection or that he recalls any prosecutorial misconduct in opening statements. While part of the victim's testimony is missing, her preliminary hearing testimony was made available to fill in any gaps.[10] In these circumstances, it was not objectively unreasonable for the Superior Court to conclude that Harvey's *Draper* claim was without merit because he failed to demonstrate a colorable need for the actual transcripts from the first two days of trial. We find that the Superior Court's denial of relief was not contrary to or an unreasonable application of *Draper,* nor was it based on an unreasonable determination of facts. The petition should be denied as to the claim presented in Ground Five.

## IV.    CONCLUSION

For the aforementioned reasons, this Court finds the claim of ineffective assistance of trial counsel for failure to file a Rule 600 motion to be procedurally defaulted and the remaining claims as without merit. Pursuant to Local Appellate Rule 22.2 of the United States Court of Appeals for the Third Circuit, at the time a final order denying a habeas petition is issued, the district judge is required to make a determination as to whether a certificate of appealability ("COA") should issue. Under 28 U.S.C. § 2253(c), a habeas court may not issue a COA unless "the applicant has made a substantial showing of the denial of a constitutional right." *See also Slack v. McDaniel*, 529 U.S. 473, 484 (2000). As to claims that are dismissed on procedural grounds, the petitioner bears the additional burden of showing that jurists of reason would also

---

[10] The trial court indicated that "about two hours of testimony" was taken on March 7. *See Harvey*, No. 2439 EDA 2007, slip op. at 8 (noting same).

debate the correctness of the procedural ruling.  (*Id.*)  Here, for the reasons set forth above, we do not believe a reasonable jurist would find the court to have erred in denying the present petition or that reasonable jurists would debate our determination that Harvey's challenges to the performance of trial and appellate counsel, and his challenge regarding the transcript issue, were meritless or procedurally defaulted.  Accordingly, we do not believe a COA should issue.

Our Recommendation follows.

# R E C O M M E N D A T I O N

**AND NOW**, this 28TH day of April, 2017, it is respectfully **RECOMMENDED** that the petition for a writ of habeas corpus be **DENIED AND DISMISSED**.  It is **FURTHER RECOMMENDED** that a certificate of appealability should **NOT ISSUE**, as we do not believe that Petitioner has demonstrated that reasonable jurists would find the correctness of the procedural aspects of this Recommendation debatable nor debate whether his petition states a valid claim.

Petitioner may file objections to this Report and Recommendation.  *See* Local Civ. Rule 72.1.  Failure to file timely objections may constitute a waiver of any appellate rights.

BY THE COURT:


 /s/ David R. Strawbridge, USMJ
DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE